IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ELLIE SHAINA BLASBERG,

     Plaintiff,

v.                                                      CASE NO. 1:21-cv-00127-GRJ

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

     Defendant.
_____/

## MEMORANDUM DECISION

Plaintiff, Ellie Shaina Blasberg ("Blasberg"), appeals to this Court

from a final decision of the Acting Commissioner of Social Security (the

"Commissioner") denying Blasberg's applications for Supplemental Social

Security Income ("SSI") benefits filed on January 25, 2019, and child's

insurance disability benefits filed on April 30, 2019.  ECF No. 1.  The

Commissioner has answered, ECF No. 8, and both parties have filed briefs

outlining their respective positions. ECF Nos. 14, 20.

In her appeal, Blasberg challenges the Commissioner's assessment

of a mental health source statement by psychiatric nurse, Kathy Noffsinger,

ARNP ("Noffsinger"), as well as the Appeals Council's treatment of a

mental health source statement opinion by Cindi Gayle, Ph.D. ("Dr. Gayle"),

and the statement by Blasberg's former employer, Evan Erxleben ("Mr. Erxleben").  ECF No. 14.   Further, Blasberg contends that the Appeals Council erred in concluding that her new evidence would not change the outcome of the decision.  The Commissioner contends there was no error. The Court agrees.   For the reasons explained below, the final decision of the Commissioner is due to be affirmed.

## I.  PROCEDURAL HISTORY

Blasberg's applications alleged disability beginning May 31, 2018, due to depression, trichotillomania, tic disorder, social anxiety, memory loss, obsessive-compulsive disorder, severe language impairments, autism level 1, attention deficit hyperactivity disorder, and poor executive function disorder.  *See* R. 392.   Her applications were denied initially and upon reconsideration. R. 139-54, R. 232-56.  Following a hearing held *via* telephone on August 10, 2020, an administrative law judge ("ALJ") issued an unfavorable decision, finding that Blasberg can perform a full range of work at all exertional levels physically, but with the following non-exertional limitations:

> Mentally, the claimant cannot perform complex tasks but can perform simple, routine tasks with one to three step tasks with concentration on those tasks for two-hour periods of time with customary breaks and a lunch.  She must avoid more than occasional interaction (up to one third of the day) with the

public, coworkers and supervisors.  She must avoid frequent
(more than two thirds of the day) changes in the work setting.

R. 76.  Uncommon to most Social Security appeals, Blasberg worked
(without accommodation) after the alleged disability onset date both as a
stagehand/usher at a local theater and as a summer day camp counselor in
Wisconsin.  *See* R. 74.[1]

The Appeals Council granted review, and Blasberg submitted new
evidence in the form of third-party statements from Blasberg's mother and
Blasberg's former employer along with medical source statements from
three (3) of her mental health practitioners—all dated May 2021.  The
Appeals Council found that the additional evidence did not show a
reasonable probability that the outcome of the decision would change and
adopted the ALJ's findings and conclusions that Blasberg was not disabled.
R. 4-8.  This appeal followed.

Blasberg argues that reversal and remand is required for three
reasons.  First, she says that the ALJ erroneously found unpersuasive
Noffsinger's July 15, 2019, mental source statement, to the extent that she
opined that Blasberg has severe and marked limitations in mental

---

[1] The record also reflects that Blasberg had odd jobs as a carpool driver, driving kids to
activities two or three times per week, and as a house cleaner.  *See* R. 620.
Additionally, she reported that she planned to spend two (2) months in Wisconsin to
take care of her sister's cat while she was away, and that she would be able to take
care of herself while she was alone.  R. 149.

functioning. *See* R. 581-585.  Second, Plaintiff says the Appeals Council misinterpreted both Dr. Gayle's opinion evidence and Mr. Erxleben's statements regarding Blasberg's limitations in a work setting, resulting in the erroneous finding that Blasberg has the RFC to perform full time, substantial gainful activity.  Third, Plaintiff argues that the Appeals Council erred in finding that certain additional evidence did not show a reasonable probability that it would change the outcome of the decision.  ECF No. 14. In particular Blasberg says the Appeals Council erred in it treatment of (1) the May 2021 mental health source statement of Dr. Gayle; (2) the May 2021 statement from former employer Mr. Erxleben; and (3) the May 2021 mental health source statement from Jessica Hess, M.D. ("Dr. Hess"). *Id*. at 25-34.

The Commissioner counters that the ALJ properly determined that Noffsinger's opinion was unpersuasive; that the Appeals Council did not err either in its assessment of Dr. Gayle's opinion or Mr. Erxleben's statement; and that the Appeals Council did not err in concluding that the May 2021 statements did not show a reasonable probability that they would change the outcome of the decision.  ECF No. 20.

## II.   LEGAL STANDARDS

The Commissioner's conclusions of law, including applicable review standards, are not presumed valid.  *MacGregor v. Brown*, 786 F.2d 1050, 1053 (11th Cir. 1986) (*citing Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir. 1982) quoting *Smith v. Schweiker,* 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981)).  The Commissioner's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal. *Gibson v. Heckler,* 779 F.2d 619, 622 (11th Cir. 1986) (citation omitted); *Bowen v. Heckler,* 748 F.2d 629, 635-36 (11th Cir. 1984); *see Ambers v. Heckler,* 736 F.2d 1467, 1470 (11th Cir. 1984).  Accordingly, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The Commissioner's findings of fact, however, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citation omitted); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (citation omitted). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citations omitted); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("[T]he entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings.") (citation omitted); *Parker v. Bowen,* 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied).

"When the Appeals Council grants review, the Appeals Council decision is reviewable as the final decision of the Secretary[, but w]hen the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary." *Falge v. Apfel,* 150 F.3d 1320, 1322 (11ᵗʰ Cir. 1998) (*citing Keeton v. Department of Health and Human Servs.,* 21 F.3d 1064, 1066 (11th Cir.1994) (alteration in original) (internal quotation marks omitted)). "'With a few exceptions, the claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council.'" *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11ᵗʰ Cir. 2015) (quoting *Ingram v. Comm'r, Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11ᵗʰ Cir. 2007) (internal quotation marks omitted).

The Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of decision." 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5). "Evidence is material if a reasonable probability exists that the evidence would change the administrative result." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11ᵗʰ Cir. 2018) (per curiam). New evidence is chronologically relevant if it "relates to the period on or before the date of the ALJ's hearing

decision. *Id*. (*citing* 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b)).

Evidence may be chronologically relevant even if it post-dates the ALJ's

decision.  *See Washington*, 806 F.3d at 1322 (finding that postdated

examining opinion was chronologically relevant even though the

psychologist examined the claimant seven months after the ALJ's denial

where the psychologist reviewed the claimant's treatment records from the

period before the ALJ's decision and where there was no assertion or

evidence that the claimant's condition had worsened in the period following

the ALJ's decision).

## III.   DISCUSSION

### A.   Neither the ALJ nor the Appeals Council erred in their treatment of Noffsinger's mental health source statement.

In her brief, Blasberg references two shortcomings regarding the

ALJ's treatment of Noffsinger's mental health source statement.  First,

Blasberg says the ALJ erred in characterizing Noffsinger's opinion as

"clearly" depicting no more than moderate functional limitations in that

Noffsinger found Blasberg would have severe and marked limitations.  ECF

No. 14 at 1.  Because of the ALJ's mischaracterization of Noffsinger's

opinion, Plaintiff says the ALJ wrongly discounted it.  Rather than flesh out

her challenges to the ALJ's treatment of Noffsinger's statement, Blasberg

instead develops arguments challenging the Appeals Council's treatment of

the statement.  The Court will address the arguments presented at the
administrative and appeals stages separately.

     *1.*    *The ALJ did not err in his assessment of Noffsinger's mental*
           *health source statement.*

At issue is Noffsinger's July 15, 2019, mental health source
statement, in which Noffsinger noted that Blasberg's highest GAF score in
the past year was 51.  R. 581.  Further, Noffsinger opined that Blasberg
has (1) moderate restrictions of daily living, (2) marked limitations in
maintaining social functioning, (3) frequent deficiencies of concentration,
persistence or pace resulting in failure to complete tasks in a timely manner
(in work settings or elsewhere), and (4) repeated episodes of deterioration
or decompensation in work or work-like settings.  R. 583.  Noffsinger also
determined that Blasberg had "poor to no ability" to maintain attention for
two hours; maintain regular attendance and be punctual within customary,
usually strict tolerances; work in coordination with or proximity to others
without being unduly distracted; complete a normal workday and workweek
without interruptions from psychologically based symptoms; perform at a
consistent pace without an unreasonable number and length of rest
periods; get along with co-workers or peers without unduly distracting them
or exhibiting behavioral extremes; and deal with normal work stress.  R.
584.

The ALJ reviewed Noffsinger's statement and noted the inconsistency between her opinion that Blasberg would have severe and marked mental limitations and Blasberg's GAF score of 51, which was "indicative of no more than moderate mental limitations."  R. 81.  The ALJ found Noffsinger's opinion to be unpersuasive because "the evidence clearly depicts that [Blasberg] has no more than moderate functional limitations."  *Id*.  The ALJ reasoned that severe to marked mental limitations were inconsistent with and unsupported by the record, including Noffsinger's own treatment notes.  R. 80-81.

Blasberg argues that the ALJ's finding that her mental limitations are no more than moderate was error, because the ALJ based that finding relying solely on Blasberg's GAF score.  ECF No. 14 at 1.  Due to the unreliability of GAF scores under Agency policy, Blasberg contends that an ALJ cannot rely on a GAF score alone to establish a claimant's functional limitations.  *Id*. at 18.

The Commissioner contends that Blasberg's GAF score was not the only data the ALJ considered when he found Noffsinger's statement to be unpersuasive.  Rather, the GAF score was but just one of many pieces of data that supported the ALJ's conclusion that Blasberg suffers only moderate mental limitations.  ECF No. 20 at 9.

The Court agrees with the Commissioner.  The ALJ's decision shows that the ALJ relied upon much more than Blasberg's GAF score in concluding that Blasberg's mental limitations were moderate and not severe.  Overall, the ALJ found that the record reflected that Blasberg "is high functioning and has high average intelligence and engages in activities which are inconsistent with a total inability to work." R. 80.  For example, the ALJ relied upon the following evidence to support his finding that Blasberg's mental limitations were moderate and not severe: (1)  Blasberg traveled to Israel for ten (10) days in October of 2018; (2) during the summer of 2019, she worked with special needs children as a day camp counselor in Wisconsin;[2] (3) after her alleged disability onset date, she also worked as a stage-hand/usher at a local theater for an hourly wage; (4) she has a driver's license and drives on a daily basis; (5) she is able to navigate to unfamiliar places using GPS; (6) she received her high school diploma; (7) she lives independently and has lived with roommates in an apartment off-campus while taking one college course twice weekly; and (8) she can

---

[2] The record also reflects that Blasberg took a two-week vacation to New York to visit her father and that she traveled by train to Wisconsin to help family members take care of a new baby.  See R. 644.

concentrate on tasks such as understanding the plot details of a movie and watching the movie in its entirety.   R. 75, 78, 80.

Moreover, the ALJ stressed that Noffsinger "consistently assessed" Blasberg with "rule out mild autism."  R. 80. Further, the ALJ pointed out that Noffsinger referenced Blasberg's "lack of motivation and limited treatment with some noted improvement with her medications." *Id*. *See* R. 202 (noting that Blasberg has an "assumed lazy identity" which is undermined by "ineffective parenting" as she feels no "need" to make progress).

Based upon a review of the whole record, the Court concludes that the ALJ did not solely rely on Blasberg's GAF score to discount Noffsinger's opinion that Blasberg would have severe to marked mental limitations.  Accordingly, the ALJ's assessment that Noffsinger's opinion was unpersuasive is supported by substantial evidence and reversal is not required on this ground.

   2.   *The Appeals Council did not err in its treatment of Noffsinger's statement.*

Blasberg next contends that the Appeals Council erred in its own treatment of the Noffsinger statement.  According to Plaintiff, because the Appeals Council did not reference the statement in its Decision, it failed to

adopt or reject the ALJ's finding that the statement was unpersuasive.  ECF No. 14 at 16-17.[3]

In response to this argument, the Commissioner acknowledges that the Decision does not specifically cite to the Noffsinger statement. The Commissioner contends, however, that this omission was not error in light of the Appeals Council's general statement that it "adopts the Administrative Law Judge's statements… regarding the evidentiary facts."[4] *See* R. 4.  That general statement, the Commissioner says, was sufficient to show that the Council adopted the ALJ's finding that Noffsinger's opinion was unpersuasive.  ECF No. 20 at 6. The Court agrees with the Commissioner on this point.

---

[3] Blasberg makes an additional argument premised on the asserted GAF score error discussed above.  Here, she says that because the ALJ wrongly relied on Blasberg's GAF score of 51 to support his "moderate limitations" finding, the Appeals Council erred by not reconciling a conflict in the evidence between Noffsinger's opinion that Blasberg would have severe and marked mental limitations and the ALJ's "moderate limitations" finding.  ECF No. 14 at 18.  Because the Court rejects the argument that the ALJ relied solely on the GAF score to support his "moderate limitations" finding, the Court need not address this challenge.

[4] In support of this argument, the Commissioner relies on *Zilahy v. Astrue*, No. 3:11-cv-206-J-JRK, 2012 WL 4207381 (M.D. Fla. Sept. 19, 2012).  In *Zilahy*, the district court concluded that the Appeals Council's statement that it adopted the ALJ's findings regarding the "*evidentiary facts, as applicable*" constituted an adoption of the ALJ's credibility determination for purposes of review even though the credibility determination was never explicitly referenced in the Appeals Council's decision.  *Id*. at *11 (emphasis in original).

At the appeals stage, the Appeals Council adopted the ALJ's finding that Blasberg had a moderate limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting or maintain pace; and a moderate limitation in adapting or managing oneself.  R. 4-9. The ALJ's "moderate limitations" finding, as discussed above, was based upon substantial evidence (after a review of the entire record).  Thus, the Appeals Council did not err in its adoption of the ALJ's finding that Blasberg would have moderate functional limitations.

**B.    The Appeals Council did not err in finding that Blasberg retained the residual functional capacity to perform full time, sustained gainful activity, nor did it err in its analysis of the statements of Dr. Gayle or Mr. Erxleben.**

Blasberg next argues that the Appeals Council erred in finding that Blasberg retained the residual functional capacity to perform fulltime, sustained gainful activity.  The error, she says, springs from the Appeals Council's misinterpretation of the mental health source statement of Dr. Gayle and its misunderstanding of the content of Mr. Erxleben's statement.

Blasberg argues that the Council wrongly interpreted Dr. Gayle's opinion as limited to educational settings only.  Consequently, the Council failed to consider the broader purpose of Dr. Gayle's evaluation and assessment, which was error.  ECF No. 14 at 20-23.  As to Mr. Erxleben's

statement, Blasberg says that contrary to the findings of the Appeals
Council, Mr. Erxleben's statement is inconsistent with (and not consistent
with) Blasberg's RFC.  *Id*. at 23-25.  According to Plaintiff, instead of
supporting an RFC limitation "to simple, routine tasks with one to three
steps and avoiding frequent changes in the workplace," Mr. Erxleben's
statement, in fact, supports a far more limited functional capacity.  *Id*. at 24.

The Commissioner disagrees.  She says that the Council properly
interpreted both statements, and that it is Blasberg who misses the point.
First, the Commissioner says that contrary to Blasberg's argument, the
Council did not limit Dr. Gayle's opinion to educational settings.  What the
Council recognized was that any opinion regarding the amount of time
Blasberg needed to complete a school exam did not translate to a work
setting.  Moreover, the Commissioner says that the fact that Dr. Gayle
recommended that Blasberg take advantage of vocational rehabilitation
services supports the notion that Dr. Gayle assessed Blasberg was, in fact,
capable of working.  ECF No. 20 at 11-12.

As for Mr. Erxleben's statement, the Commissioner contends that
Blasberg's argument that her RFC is incompatible with Mr. Erxleben's
statement is unfounded. The Commissioner cites several examples to
support her argument here.  First, the Commissioner highlights that Mr.

Erxleben's observation that Blasberg avoided interactions with her co-workers and customers (even by telephone) is accounted for by the limitation that Blasberg was limited to only occasional interaction with co-workers, customers or supervisors. Second, Mr. Erxleben's observation that Blasberg had difficulty completing multipart checklists is accounted for by the limitation to simple, routine, one to three step tasks.  Third, Mr. Erxleben's observation that Blasberg had difficulty doing tasks for the first time is accounted for by both the limitation to routine tasks and the limitation to avoid frequent changes in the workplace.  R. 20 at 13.

In sum, the Commissioner argues that the Appeals Council's assessment that Blasberg retained the functional capacity to perform fulltime sustained gainful activity is supported by substantial evidence and should, therefore, not be disturbed by this Court.

1.    *The Appeals Council properly interpreted Dr. Gayle's opinion.*

In its Decision, the Appeals Council considered the opinion of Dr. Gayle dated July 5, 2018, which the ALJ found persuasive in the hearing decision.  R. 5.  Pertinent to this appeal, in addition to recommending educational accommodations, the Appeals Council noted that "Dr. Gayle also provided techniques for [Blasberg] to increase her attention to day-to-day tasks and productivity such as using timelines for assignments, setting

up her schedule to include breaks, compartmentalizing her time, and breaking larger tasks into smaller tasks," which the Council found to be consistent with Blasberg's RFC "limitation to performing simple, routine tasks with one to three step tasks with concentration on those tasks for two-hour periods with customary breaks and a lunch."  R. 5-6.

When evaluating a medical source opinion, such as Dr. Gayle's, the regulations for disability cases filed after March 27, 2017, provide that the Commissioner no longer defers or gives any specific evidentiary weight to a medical opinion.  20 C.F.R. § 404.1520c(a).  Instead, the adjudicator (Appeals Council in this case) must assess the persuasiveness of a medical source's opinion in light of the following five (5) factors, with the first two (2) being the most important:  (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5).

In this case, the ALJ reviewed Dr. Gayle's "assessment and evaluation findings" and wrote:

> [Blasberg] maintained a fairly normal mental status, as she
> demonstrated appropriate eye contact to sustain meaningful

conversation with the examiner, and her speech was normal for rate, tone, prosody, and content.  Her thought processes were appropriate with no abnormalities, and she demonstrated no auditory or visual hallucinations.  Overall, she was social, friendly, and cooperative, and her affect was of appropriate range….. Notably, Dr. Gayle recommended [Blasberg] to VR, suggesting she noted [Blasberg's] capacity for a part-time position that could lead to permanent employment based upon [Blasberg's] functioning and earlier evaluations.

R. 81.  The ALJ then concluded that:

Overall, [Dr Gayle's] assessment and findings have been persuasive in light of [Blasberg's] conservative treatment, improvement with treatment and access to resources, as well as her demonstrated abilities.

*Id*.

This Court has reviewed Dr. Gayle's entire opinion, the ALJ's assessment of that opinion, and the Appeals Council's review of the opinion, and the Court finds no error.  The Appeals Council did not misconstrue Dr. Gayle's opinion and neither did the ALJ.

In addition to the findings discussed above, Dr. Gayle further opined that Blasberg's general intellectual ability falls within the average range, R. 559; her broad reading, mathematics and written language cluster scores fall in the Average range, R. 560; her behavioral and social-emotional functioning score indicated that she has an Elevated ADHD Total Symptom Level, R. 561; and her Autism Spectrum Disorder Level 1 consists of "deficits in social communication and restricted/repetitive behaviors along

with sensory difficulties (*i.e.*, babies crying and lights flashing)", R. 563.  In view of all her findings, Dr. Gayle opined that Blasberg would benefit from vocational rehabilitation services "to help her build her employment opportunities as well as independent living skills" and that Blasberg would benefit from "participat[ion] in community activities such as theatre to build her social skills and foster a sense of belonging and mattering."  R. 565.

In sum, Dr. Gayle opined that, despite her limitations, Blasberg could be rehabilitated to the extent that she could perform full-time work, and there is no indication in her opinion that she believed otherwise. Accordingly, the Appeals Council did not err in finding that Dr. Gayle's opinion was both persuasive and consistent with Blasberg's RFC.

> 2.   *The Appeals Council properly evaluated Mr. Erxleben's statement.*

The Appeals Council also considered the October 9, 2019, statement from Mr. Erxleben, and found it to be consistent with Blasberg's RFC.  R. 6.[5]  In his statement, Mr. Erxleben reported on his experience with Blasberg when she worked part-time as an office assistant at his company from late

---

[5] The ALJ did not exhibit or consider Mr. Erxleben's statement in his hearing decision even though the statement had been submitted to the Agency.  *See* R. 71-83 and R. 53-54.

2016 to early 2017 (about seven (7) months).  Relevant to this appeal, Mr.

Erxleben made the following observations:

- Blasberg was very shy.  "She dreaded asking coworkers questions, greeting visitors to the office, and answering or placing phone calls, to the point where it interfered with her job.  There were instances when [Blasberg] was responsible for answering the phone, and when it rang, she would let it ring several times, requiring someone else to interrupt their tasks to answer."

- Blasberg's "daily responsibilities included ordering lunch for the office, checking the mail, restocking refrigerators and break areas with drinks and snacks, ensuring the bathrooms were stocked with necessary supplies, etc.  She would occasionally be responsible for some other one-off projects, often data entry.  Unfortunately, it got to the point where [Blasberg] would do some of her tasks in the day, but not complete the rest" even after Mr. Erxleben created a daily task checklist for her.

- Blasberg "was disorganized and couldn't really mentally juggle all of her responsibilities, even when they were written out on paper."

- "From taking a deposit to the bank with the deposit slip but not the check and not understanding why they wouldn't take the deposit, to going to the grocery store and having no idea where anything was located and needing printed pictures of the items to get the exact right thing, to going out of town for the weekend and not having the foresight to know that she needed to be home in time to go to work on Monday morning or ask off in advance, it seemed like [Blasberg] was incapable of completing the most basic functions of her job."

- Consequently, "we had to let [Blasberg] go." [6]

---

[6] Blasberg testified at the administrative hearing that she worked at her the company six hours per day, three days a week.  R. 104.  Blasberg said she was let go after several months because she "wasn't proactive enough, or ... didn't take enough initiative."  R. 108.  Blasberg's mother testified that Blasberg was fired because she would be given a list of tasks to accomplish and then quickly forget what she was supposed to do. R. 120. As for not being proactive, the mother testified that Blasberg "would do the minimum amount and that was it."  R. 121.

R. 674.

The Social Security Administration may receive evidence from nonmedical sources in connection with a disability claim about any issue pertinent to that claim.  20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Nonmedical sources are evaluated under the same framework as medical sources, though, depending on the facts of the case, not all factors may apply.  20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).  Under the applicable regulations, the ALJ "[is] not required to articulate how [the ALJ] considered evidence from nonmedical sources...." 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

As the Commissioner correctly points out, Blasberg's argument here is essentially an improper invitation for the Court to re-weigh the evidence and substitute its own judgment for that of the Appeals Council. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.") (citation and internal quotation marks omitted); *see also Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the

ALJ, and we may have taken the view of it as a factfinder.  Yet, if there is

substantially supportive evidence, the findings cannot be overturned.").

In the present case, the Appeals Council adopted the ALJ's RFC

assessment that:

> Mentally, [Blasberg] cannot perform complex tasks but can perform simple, routine tasks with one to three step tasks with concentration on those tasks for two-hour periods of time with customary breaks and a lunch.  She must avoid more than occasional interaction (up to one third of the day) with the public, coworkers and supervisors.  She must avoid frequent (more than two thirds of the day) changes in the work setting.

R. 76.  As discussed above, there is substantial evidence in the record to

support this determination.  And, although Mr. Erxleman's statement

describes Blasberg's poor performance at her office job, it does not

establish that Blasberg is incapable of any gainful activity.  When taken in

the context of the entire record, Mr. Erxleben's statement shows an

incomplete picture of Blasberg's actual capacity for work.  Other evidence

in the record in contrast reflects that Blasberg was capable of performing

odd jobs such as driving in a carpool, cleaning houses, supervising special

needs children at summer camp, babysitting an infant, working as a

stagehand at a theater—all without accommodation—even after her

alleged disability onset date.  Moreover, Blasberg testified that she thought

she could do repetitive work in a factory setting but that she had not been

given the chance. R. 106.  Blasberg's mother also testified that Blasberg

could possibly do the work of a courier delivering documents from one

location to another, given that she had no trouble driving to unknown

destinations.  R. 121.

In sum, substantial evidence supports the Appeals Council's

assessment of Dr. Gayle and Mr. Erxleben's statements as well as its

adoption of the ALJ's RFC determination.

**C.    The Appeals Council did not err in finding that the
        additional evidence did not show a reasonable
        probability that it would change the outcome of
        the decision.**

Finally, Blasberg contends that the Appeals Council erred in

concluding that the new evidence she submitted at the appeals stage

would not change the outcome of the decision.  The Commissioner

contends that there was no error on this front.

The new evidence at issue in this appeal are three (3) May 2021

statements—one from Mr. Erxleben, and two from mental health

professionals, Dr. Gayle and Patricia Hess, M.D. ("Dr. Hess").

When evidence has been presented to the Appeals Council that was

not presented to the ALJ (new evidence), the new evidence is part of the

record on appeal. *See Keeton v. Dep't of Health & Human Servs.,* 21 F.3d

1064, 1066-67 (11th Cir. 1994).  To succeed on a claim that remand is

appropriate, a plaintiff must show that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level. *See Cannon v. Bowen,* 858 F.2d 1541 (11th Cir.1988); *see also Keeton,* 21 F.3d at 1067 (court may remand to Secretary if new evidence is material and good cause exists for failure to incorporate the evidence in the record during proceedings before the ALJ).

In its decision, the Appeals Council reviewed but did not exhibit Blasberg's new evidence, finding that the "new evidence does not show a reasonable probability that it would change the outcome of the decision." R. 4.  Blasberg takes issue with that finding, arguing that the May 2021 statements met the requirements for remand.  The Court disagrees.

   1.   *Dr. Gayle's May 1, 2021 statement*.

On May 11, 2021, Dr. Gayle completed a Psychiatric Review Technique form covering the time period between May 31, 2018, to May 11, 2021.  R. 37-49.  Using the form, Dr. Gayle assessed Blasberg's impairments from the perspective of the Listings as well as work-related criteria.  *Id*.  Dr. Gayle opined that Blasberg's impairments met the listing requirements for 12.04 (depressive related disorders), 12.06 (anxiety

related disorders), 12.10 (autistic disorder), and 12.11

(neurodevelopmental disorders).  R. 37.  Further, Dr. Gayle opined that

Blasberg would have extreme limitations in her ability to understand,

remember or apply information; interact with others; and adapt or manage

herself.  Blasberg would have marked limitations in her ability to

concentrate, persist or maintain pace (with medication support).  R. 48.

Finally, in the Comments section, Dr. Gayle states that:

> [Blasberg] struggles significantly with adapting to changes in
> her environment primarily due to her symptoms of ASD.  A
> hallmark piece of the diagnosis is difficulties adapting to
> change.  She has social communication difficulties, restricted
> and repetitive behavior and sensory issues, which can lead to
> her felling overwhelmed.  She also has anxiety, panic +
> depression.  Past employers report [Blasberg's] difficulties to do
> basic work tasks.  As a result, she relies heavily on her family to
> help her.  Her adaptive functioning skills are impaired.

R. 49.

The most glaring problem with Dr. Gayle's 2021 statement is that it is

at odds with her prior extensive opinion from 2018, opining that Blasberg

was performing within normal limits. That sea change came without any

explanation as to why Dr. Gayle shifted her opinion so wildly.  Moreover,

the 2021 checklist opinion does not point to any documentation or records

to support Dr. Gayle's new findings that Blasberg would have severe and

marked limitations.

Moreover, as the Commissioner points out, both the 2021 opinion and the 2018 opinion are based upon the same July 2018 assessments and evaluation.  ECF No. 20 at 17.  So, in the absence of an explanation for what caused Dr. Gayle's opinion to dramatically shift, substantial evidence supports the Appeals Council's decision that her 2021 opinion would not change the outcome of decision.

2.   *Mr. Erxleben's May 10, 2021 statement.*

On May 10, 2021, Mr. Erxleben filled out a Special Work Conditions form, responding to specific questions about his experience with Blasberg's ability to do simple, routine office work.  R. 53-54.

Mr. Erxleman's 2021 statement expounds slightly upon the statement he supplied in October of 2019, but none of the pertinent information is new.  For instance, Mr. Erxleben's 2021 statement adds the fact that Blasberg was hired as a favor to Blasberg's mother, who was the Chief Financial Officer for Mr. Erxleben's company.  Erxleben further explains that the company created the position for Blasberg to help her mother even though the job was not needed at the company. R. 53.  Beyond this new irrelevant information, the 2021 statement contains the exact same information regarding Blasberg's poor job performance that Mr. Erxleben reported in 2019.  *See* R. 53-54; compare R. 674-75.

In sum, there is no new information in Mr. Erxleben's May 2021
statement that would change the outcome of decision.  The additional
information that Blasberg was hired by the company as a favor to her
mother would not make any difference except perhaps that Mr. Erxleben's
reports may have been influenced to a degree by his desire to help
Blasberg's mother.

In sum, the Appeals Council did not err in determining that Mr.
Erxleben's 2021 statement would not change the outcome in this case.

3.    *Dr. Hess's May 13, 2021 statement.*

On May 13, 2021, Patricia Hess, M.D. completed a Psychiatric
Review Technique form covering the time period between May 31, 2018, to
May 13, 2021.  R. 11-26.  In that form, Dr. Hess checked boxes indicating
that Blasberg would have extreme limitations in her ability to understand,
remember, or apply information; interact with others; and adapt or manage
herself.  R. 25.  Blasberg would have marked limitations in her ability to
concentrate, persist or maintain pace (with medication).  *Id*. Further,
Blasberg had a serious and persistent mental disorder that had lasted two
(2) years, and she had a minimal capacity to adapt to changes in the
environment which were not already a part of her daily life.  *Id*.

Dr. Hess's opinion is new evidence as she did not opine on Blasberg's limitations prior to May of 2021.  Notably, a review of the entire record reveals that no treatment notes from Dr. Hess can be found. Moreover, Dr. Hess failed to cite to any documentation or records to support her opinion that Blasberg would have severe and marked limitations.  Notably, Dr. Hess also failed to identify any evidence that she relied on in forming her opinions regarding Blasberg's work-related limitations.  For these reasons the Court has no trouble concluding that the Appeals Council did not err in finding that this unsupported opinion with no narrative section or other explanation regarding the basis of Dr. Hess's findings would have changed the Agency's decision.  *See Hargress*, 883 F.3d at 1310.

As the Commissioner correctly points out, the relevant question here is whether the additional evidence submitted to the Appeals Council rendered the Commissioner's denial of benefits erroneous.  *See Ingram*, 496 F.3d at 1262 (11th Cir. 2007) (holding that evidence submitted to the Appeals Council is considered with the record to determine whether substantial evidence supports the ALJ's decision).  Upon due consideration of the new evidence at issue in this appeal, the Court concludes that it does not.

## IV.  CONCLUSION

For all the reasons discussed above, the decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter final judgment consistent with this decision and then close the file.

**DONE AND ORDERED** this 5th day of August 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge